1  H. Daniel Fuller (Bar No. 105758)
2  Cecilia A. Perkins (Bar No. 128737)
   CADDEN & FULLER LLP
3  114 Pacifica, Suite 450
   Irvine, CA 92618-3326
4  Telephone: (949) 788-0827
   Facsimile:  (949) 450-0650
5  Email:  dfuller@caddenfuller.com
   Email:  cperkins@caddenfuller.com
6
7  Attorneys for Plaintiff,
   Bal Seal Engineering, Inc.
8
                    UNITED STATES DISTRICT COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10

11

12  BAL SEAL ENGINEERING, INC., a        Case No. 8:13-cv-01880-JLS-RNBx
    California corporation,
13                                        **FIRST AMENDED COMPLAINT**
                    Plaintiff,            **FOR:**
14
         vs.                             **MISAPPROPRIATION OF TRADE**
15                                        **SECRETS (CALIFORNIA CIVIL**
    NELSON PRODUCTS, INC., a             **CODE SECTIONS 3426 et seq.)**
16  Colorado corporation, CARL
    NELSON, an individual, and DOES 1-
17  5, inclusive,                         **DEMAND FOR JURY TRIAL**

18                  Defendants.

19

20

21

22       Plaintiff, Bal Seal Engineering, Inc. alleges as follows:

23

24                         **THE PARTIES**

25       1.     At all times mentioned herein, plaintiff, Bal Seal Engineering, Inc.

26  ("Bal Seal") was and is a corporation duly organized and existing under and by

27  virtue of the laws of the State of California with its headquarters located in Foothill

28  Ranch, Orange County, California.

                         FIRST AMENDED COMPLAINT

2.     Bal Seal is informed and believes and on that basis alleges that at all times mentioned herein, defendant, Nelson Products, Inc. ("NPI") was and is a corporation duly organized and existing under and by virtue of the laws of the State of Colorado, doing business in California, with its principal place of business located in Golden, Colorado.  NPI is a competitor of Bal Seal.

3.     Bal Seal is informed and believes and on that basis alleges that at all times mentioned herein, defendant, Carl Nelson ("Nelson") was and is the president and majority shareholder of NPI and has been and currently is a resident of the State of Colorado.

4.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 5 are unknown to Bal Seal, who therefore sues said defendants by such fictitious names.  Bal Seal will amend this Complaint to state their true names and capacities when the same have been ascertained.  Bal Seal is informed and believes and on that basis alleges that each such fictitiously named defendant is in some way responsible and liable for the acts hereinafter alleged, that Bal Seal's damages were proximately caused by their conduct, and/or each is subject to the relief being sought herein.   Hereinafter, defendants NPI, Carl Nelson, and Does 1 through 5 will sometimes be referred to collectively as "Defendants."

5.     Bal Seal is informed and believes and on that basis alleges that each of the Defendants at all times mentioned herein was an owner, co-owner, agent, representative, partner and/or alter ego of each of the other named Defendants, and in doing the things herein alleged, was acting within the course and scope of their authorities as an owner, co-owner, agent, representative, partner, and/or alter ego with the full knowledge and consent, either express or implied, of each of the other named Defendants.

///

///

FIRST AMENDED COMPLAINT

## JURISDICTION, STAY AND VENUE

6.     The original complaint in this action was filed on December 3, 2013 and included claims for patent infringement and a related state claim (the "Original Complaint"). The patent claims arose under the Patent Laws of the United States of America, 35 U.S.C. Sections 1 et seq.  This Court had subject matter jurisdiction over this action as filed on December 3, 2013 pursuant to 28 U.S.C. Sections 1331 and 1338(a) and (b).   In addition, this Court had supplemental subject matter jurisdiction over the state statutory claim pursuant to 28 U.S.C. Section 1367.

7.     On April 3, 2014, NPI filed petitions with the U.S. Patent and Trademark Office before the Patent Trial and Appeal Board ("PTAB") for inter partes review (IPR) of the patents at issue in the Original Complaint.  On April 4, 2014, NPI filed its Motion to Stay Litigation Pending Outcome of Inter Partes Review (Doc. 30) and, following briefing by both sides, on May 20, 2014, this Court issued an order granting Defendant's Motion to Stay and ordered this action stayed.  (Doc. 34.)

8.     During the two (2) years following the entry of the stay on May 20, 2014 many of the claims of each of the two (2) patents that were alleged to have been infringed in the Original Complaint were challenged by NPI in the IPR proceedings (one proceeding for each patent).  On May 11, 2015 Bal Seal filed with the PTAB a Notice Regarding Filing of Statutory Disclaimer under 37 C.F.R. § 1.321 regarding the 8,375,543 Patent.  In accordance with Bal Seal's request, the PTAB entered an adverse judgment against Bal Seal formally terminating the IPR proceeding regarding the 8,375,543 Patent.

9.     Thereafter, the remaining IPR relating to the 8,297,662 patent proceeded through final briefing and, on May 27, 2015 oral argument was held before the PTAB.  On September 24, 2015, the PTAB issued its Final Written Decision in favor of NPI and invalidated the challenged claims in the 8,297,662 patent.  On October 23, 2015, Bal Seal submitted a Request for Rehearing to the

1    PTAB.  On April 8, 2016, the PTAB denied Bal Seal's Request for Rehearing.

2        10.    In their filing of a Joint Status Report with the Court on May 20, 2016,

3    the parties agreed that the stay should be lifted and that a First Amended Complaint

4    should be filed by Bal Seal.  On June 1, 2016 this Court lifted the stay and ordered

5    that Bal Seal file its amended pleading no later than June 16, 2016 and that the

6    defense file a responsive pleading within fifteen days of the filing of the first

7    Amended Complaint.

8        11.    This First Amended Complaint has eliminated former claims One and

9    Two (both for patent infringement) that had been alleged in the Original Complaint,

10   leaving the state law claim for misappropriation of trade secrets as the sole

11   remaining claim.   This First Amended Complaint also adds Carl Nelson, the

12   principal of NPI, as a party defendant.

13       12.    Notwithstanding the above, however, this Court still has jurisdiction of

14   this matter because this Court had exclusive jurisdiction at the time the Original

15   Complaint was filed.  In addition, jurisdiction is also proper pursuant to 28 U.S.C.

16   Section 1332 (a) in that there is complete diversity of citizenship among plaintiff

17   and defendants and the amount in controversy exceeds $75,000.  Venue is proper in

18   this District pursuant to 28 U.S.C. Section 1391(b) and (c) as Defendants have

19   committed acts of misappropriation in this District, have targeted customers located

20   in this District, and the damaging effects of their conduct have been felt by Bal Seal

21   in this District as its headquarters (Foothill Ranch) is located here.

22

23                          **GENERAL ALLEGATIONS**

24                            **Bal Seal's Business**

25       13.    Over the last approximately sixty years, Bal Seal has become one of

26   the most successful and significant pioneers in the world in the design, fabrication,

27   and application of "canted coil springs" for use in combination with elastomeric

28   seals loaded with those springs, and for use in various other applications, including

as mechanical and electrical connectors in combination with pins and housings. Bal Seal is or has been the holder of more than a hundred United States and foreign patents related to canted coil springs and continues to invest enormous amounts of money, time and engineering talent in research and development in order to maintain its position as a preeminent research and development company in the application of this technology to a multitude of industries ranging from aerospace to automotive to medical.

14.    Bal Seal has hundreds of employees and thousands of customers worldwide and is able, because of its continuous investment in research and development, to provide sophisticated engineering services to its customers that other companies cannot or will not provide because they lack the expertise, or are unwilling or unable to spend the time and money necessary in research and development, or both. Bal Seal's engineers typically work very closely with its customers to design solutions to the customer's engineering challenges using Bal Seal's technology. Typically, Bal Seal's engineers and technical support personnel work with the customer over the course of weeks or months to first understand the unique engineering challenge faced by the customer and then to design, develop and produce a canted coil spring product which provides the engineering solution to the problem or challenge posed by the customer.

15.    It is also typically the case that Bal Seal either does not charge the customer for these engineering services or, if there is a charge, it is minimal and only assessed if and when prototypes are requested. Bal Seal retains ownership of the ideas, know how, and engineering solutions which it develops and proposes to the customer, and it provides the engineering services to the customer without charge with the expectation that once a solution has been developed, Bal Seal will recoup its substantial up-front investment on the back-end when the customer orders the production parts.  Bal Seal's customers understand and agree to this arrangement.

16.   In order to protect its rights to the intellectual property which Bal Seal develops in the course of formulating an engineering solution for its customers, Bal Seal (i) has its customer execute a confidential non-disclosure agreement ("NDA") and/or; (ii) includes on the drawings and other technical work papers it provides to its customers a legend identifying the material as proprietary to Bal Seal with related disclosure and use restrictions and /or (iii) includes disclosure and use restrictions in the "terms and conditions" of sale.   These documents are designed to alert the customer and anyone else who may have access thereto to the proprietary nature of the data and thereby prevent unauthorized use or disclosure of the confidential information generated or disclosed by Bal Seal in the course of its work for and on behalf of the customer, including, particularly, the engineering solution/design   (including   the   spring   and/or   seal/gland   specifications) recommended and developed by Bal Seal.

17.   As described above, in exchange for receiving the benefit of Bal Seal's considerable resources and expertise on their behalf, Bal Seal's customers are obligated (either by way of an NDA, the proprietary legends affixed to the material they receive, the terms and conditions of sale, or a combination of the above), to maintain the confidentiality of the work done by Bal Seal and not disclose it to Bal Seal's competitors or to otherwise use the information received from Bal Seal in any way except in concert with Bal Seal.   Bal Seal relies on its contractual provisions and other confidential designations as well as its customers' understanding and commitment to confidentiality to give it the necessary protection for its ideas and know-how before or at the time it discloses to the customer the engineering solutions it has developed on the customer's behalf. Without either an executed NDA or the express or implied agreement of the customer to honor the proprietary and confidential nature of this information by virtue of the confidentiality/proprietary legends or otherwise, Bal Seal would not do the work and provide the engineering solutions to the customer for fear that the customer

would take those solutions and give them to a competitor (like NPI) in the form of engineering drawings or otherwise.  In that circumstance, the competitor could then manufacture the parts to the specifications originally developed by Bal Seal for the customer, but at a much lower price because the competitor would be able to avoid the substantial overhead expense associated with conducting significant and on-going research and development.   In that event, Bal Seal would not only be deprived of its intellectual property by having its customer give its technical know-how to a competitor so that that competitor could fabricate and sell the production parts, but it would also deprive Bal Seal of the opportunity to recoup its R&D expense and earn a profit on the production of the parts.

## Defendant Nelson Products, Inc. ("NPI")

18.    Defendant NPI competes with Bal Seal in that it also manufactures and sells canted coil springs.  Bal Seal is informed and believes and on that basis alleges that NPI has approximately ten employees, has been in business for about twelve years, has few if any engineers, and does not have a significant research and development capability.

19.    Bal Seal is informed and believes and on that basis alleges that NPI has adopted as its business model the manufacturing of canted coils springs for customers who come to it with a previously engineered solution. In order for a smaller company like NPI to be successful in poaching customers from other much larger companies like Bal Seal, NPI must offer a significantly reduced price to the customer.  NPI can offer that reduced price by avoiding the heavily front-loaded research and development costs incurred by companies like Bal Seal who actually develop the engineering solutions and final product specifications.

20.    Bal Seal is informed and believes and on that basis alleges that some of its customers are solicited by NPI or otherwise come in contact with NPI as a potential alternate and/or cheaper source for production parts involving canted coil

1  springs.  The customer then gives to NPI the engineering solution developed by Bal
2  Seal.  The solution may be transmitted to NPI verbally or in writing in the form of
3  engineering drawings, specifications or otherwise.  NPI then makes the production
4  parts for the customer and charges substantially less than it would have charged had
5  it been required to actually develop the engineering solution and engineer the parts
6  itself.  In this way, NPI still maintains a good profit margin, and the customer, at
7  the risk of violating its confidentiality obligations to Bal Seal, can get a
8  significantly reduced price for its production parts.

9      21.    Bal Seal is informed and believes and on that basis alleges that
10  Defendants are well aware that the engineering solutions and specifications that
11  have been provided to it by Bal Seal's customers (who then became NPI's
12  customers) were not developed in-house by the customer, but were, as alleged
13  hereinafter, developed by Bal Seal and provided by Bal Seal to the customer
14  pursuant to an obligation on the customer's part to maintain their confidentiality.

15      22.    Related to the conduct described above, Bal Seal is informed and
16  believes and on that basis alleges that Defendants engage in the unethical practice
17  of "black hatting" whereby NPI purposefully imbeds the name "Bal Seal" and
18  "canted coil spring" in the hidden script of its *own* website for the sole purpose that
19  NPI's name will appear with, or in close proximity to, "Bal Seal" whenever
20  someone uses a search engine to search the internet for either "canted coil spring"
21  or "Bal Seal."   In this way, Defendants are able to leverage Bal Seal's name,
22  principal product and well-known reputation to Defendants' advantage in targeting
23  Bal Seal customers and potential customers and drive them to NPI as an alternative
24  source for canted coil spring products.

25  ///
26  ///
27  ///
28  ///

**Improper Acquisition and Use**

23.    Bal Seal is aware of instances where customers of Bal Seal have disclosed to NPI technical information relating to a product designed by Bal Seal and recommended by Bal Seal for use by the customer.  Bal Seal is informed and believes and on that basis alleges that the customers made these disclosures to NPI in an effort to either qualify NPI as a "second source" for the Bal Seal-designed product, or to have NPI actually manufacture the product as a primary source, but at a price much below the price quoted by Bal Seal.    These customers are longstanding customers of Bal Seal, and, as is typically the case, had sought engineering solutions from Bal Seal to technical problems they faced.  Bal Seal's engineers and technical support personnel utilized their expertise and Bal Seal's resources, including its intellectual property in the form of its trade secrets and know-how in engineering, and provided the engineered solution to the customer, usually in the form of engineering drawings which contained a detailed description of the recommended solution with specific dimensions and specifications for the canted coil spring and any related devices.

24.    Bal Seal is informed and believes and on that basis alleges that in each instance where these disclosures were made by the customer to NPI, the customer was in violation of its NDA with Plaintiff and/or of the clear implied agreement it had with Bal Seal -- as evidenced by the product drawings and specifications, and/or the terms and conditions of sale and course of conduct of the parties -- to the effect that the customer would not permit the use or disclosure of Bal Seal's engineering solution and product specifications to any third party for any reason.

25.    Notwithstanding the above, however, Bal Seal is informed and believes and on that basis alleges that each of these customers violated their confidentiality obligations with Bal Seal and disclosed Bal Seal's trade secret information to NPI, thereby enabling NPI to produce the product engineered by Bal Seal.

26.     In addition to the specific instances where Bal Seal believes particular customers have disclosed Bal Seal's engineering solutions to NPI in violation of their obligation to *not* do so, Bal Seal is informed and believes and on that basis alleges that there are additional customers of Bal Seal of whom Bal Seal is presently unaware who have made similar arrangements with NPI, also in violation of their obligations (pursuant to an NDA or otherwise) with Bal Seal.

## CLAIM

### (Misappropriation of Trade Secrets - - California Civil Code Sections 3426 et seq.)

### (Against All Defendants)

27.     Bal Seal realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 above as though fully set forth herein.

28.     Bal Seal's trade secrets at issue in this action consist of the know how expressed in the engineering solutions developed by Bal Seal for its customers at the customers' request. These engineering solutions are owned by Bal Seal and are provided to the customer under an obligation to preserve their confidentiality. However, notwithstanding the obligation of confidentiality, in some instances these engineering solutions have been subsequently disclosed by certain customers to NPI in order to enable NPI (instead of Bal Seal) to manufacture the parts that were designed and engineered by Bal Seal and reap the profit therefrom.

29.     This trade secret information has independent economic value deriving from the fact that it is not generally known to Bal Seal's competitors or potential competitors. These trade secrets not only represent the time and effort expended in meeting the specific engineering needs of customers, but also represent Bal Seal's substantial knowledge base developed over more than sixty years of working almost exclusively with canted coil springs. Through these decades of trial and

error and extensive experience with these specialized springs, Bal Seal has developed "know how" that it uses to its great benefit and competitive advantage over its competitors in the industry, both large and small, and including particularly, NPI.

30.     Bal Seal has taken reasonable steps to maintain the secrecy of its trade secrets, including among other things: (i) requiring customers to execute non-disclosure agreements; (ii) marking all part drawings and other technical data given to customers with "Proprietary" stamps or legends which explicitly restrict the use and disclosure of the information contained therein; (iii) including confidentiality provisions in its Terms and Conditions of Sale (pertaining to products and information provided by Bal Seal to its customers); (iv) requiring employees to execute secrecy agreements; (v) providing employees with an employee manual detailing the prohibition on the disclosure and/or use of confidential and trade secret information; and (vi) periodically instructing and/or reminding employees about their obligations to maintain the secrecy of the confidential and trade secret information to which they are exposed.

31.     In violation of California Civil Code Sections 3426 et seq., certain customers intentionally misappropriated, disclosed and/or used the foregoing trade secrets in order to obtain an alternate source (NPI) for the production of the customers' parts at a substantially lower cost to the customer.  The customers used Bal Seal's expertise in the form of Bal Seal's trade secret information to develop the best engineering solution to the customers' needs (also a trade secret) and then, once Bal Seal successfully performed, the customers provided Bal Seal's competitor, NPI, with Bal Seal's work product in order to make the products described (including canted coil springs) at a lower cost, since NPI was spared the expense of the engineering work.

32.     For its part, Defendants knew or should have known that the information improperly provided to it by each of the customers was a trade secret of

Bal Seal which Bal Seal had developed and owned and that each of the customers was under an obligation (by reason of the NDAs they had signed or otherwise) of confidentiality to neither use nor disclose that information to others, particularly competitors like NPI.  Notwithstanding that knowledge, however, and in violation of California Civil Code Sections 3426 et seq., Defendants "turned a blind eye" and received the confidential and trade secret information belonging to Bal Seal from the customers and, without authorization from Bal Seal, commenced producing the very parts for the customers which Bal Seal had recommended, designed and reduced to precise engineering drawings.

33.    Bal Seal learned of the misappropriation of trade secrets as alleged herein within three years of the filing of the Original Complaint.

34.    As a direct result of Defendants' conduct as alleged, Bal Seal has sustained substantial harm and economic damage, and Defendants will continue to be unjustly enriched by these actions, though the precise amount of the unjust enrichment is not yet known.

35.    In the event that neither Bal Seal's actual damages nor Defendants' unjust enrichment are subject to proof, Bal Seal shall be entitled to a reasonable royalty pursuant to California Civil Code Section 3426.3(b).

36.    The conduct of defendant Nelson, acting for himself and on behalf of NPI in his capacity as both the president and principal shareholder of NPI, was willful and malicious.  Nelson acted with knowledge that his actions and those of NPI were illegal and represented a misappropriation of Bal Seal's trade secrets as alleged herein.  Accordingly, Bal Seal is entitled to exemplary damages pursuant to California Civil Code Section 3426.3(c) and is entitled to attorneys' fees and costs pursuant to California Civil Code Section 3426.4.

37.    Unless restrained, Defendants will continue to act in the manner described herein to Bal Seal's great and irreparable injury, for which damages alone will not afford adequate relief.  Bal Seal therefore seeks a temporary restraining

order and an order to show cause for a preliminary injunction pending trial, and a permanent injunction thereafter, pursuant to California Civil Code Section 3426.2. Such a restraining order and permanent and preliminary injunction should direct Defendants to immediately cease their misappropriating activities and promptly return all of Bal Seal's property, including all documents and electronically stored material containing information pertaining to or belonging to Bal Seal.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Bal Seal respectfully requests that this Court enter judgment against Defendants and issue an award in favor of Bal Seal as follows:

1.    For compensatory damages in an amount to be determined at trial for misappropriation of trade secrets pursuant to California Civil Code Sections 3426 et seq.;

2.    For a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants from: (i) using or disclosing any information developed by Bal Seal for a customer of Bal Seal and which was in turn provided to NPI by that customer; (ii) producing any parts engineered or recommended by Bal Seal for any customers for whom NPI agreed to produce the same or similar part and; (iii) ordering the immediate return of all of Bal Seal's trade secret, confidential and proprietary information, including hard copies, electronically stored files, flash drives, hard drives, CDs, DVDs, and/or any other material containing such information in any tangible form or format;

3.    For punitive and/or treble damages in an amount to be determined at trial;

4.    For payment of attorneys' fees and costs;

5.    For pre-judgment and post-judgment interest in the maximum amount

1    permitted by law; and

2    6.    For such other and further relief as the court may deem just and

3          proper.

4

5    DATED:  June 15, 2016              CADDEN & FULLER LLP

6

7                                       By:  _____/s/_____

8                                            H. Daniel Fuller
                                             Cecilia A. Perkins
9                                            Attorneys for Plaintiff,
                                             Bal Seal Engineering, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

3
Bal Seal respectfully requests a trial by jury.

4
Dated:  June 15, 2016                    CADDEN & FULLER LLP

5

6
                                                    By: _____/s/_____

7
                                                            H. Daniel Fuller

8
                                                            Cecilia A. Perkins
                                                            Attorneys for Plaintiff,

9
                                                            Bal Seal Engineering, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT